Good morning, Your Honors. May it please the Court, my name is Chuck Marshall, and I represent the Accelec-Tarrant Grove. I intend to reserve two minutes for rebuttal. I'm aware that you've read the briefs and you're familiar with the issues. There's a few points that I'd like to emphasize in relation specifically to the issue of the reasonable rate. First, the issue is whether the Court's decision failed the proper standard of whether the request rates are in line with those in the community for the services of lawyers with comparable skill, experience, or reputation. There are four primary areas where we believe the Court's decision fails the standard. The first, and I think perhaps the most obvious area, is the fact that the Court applied a uniform rate across four different attorneys with differing levels of experience, skill, and reputation. Regardless of what the District Court felt about the comparable complexity of the orders submitted by plaintiff of rates they've been paid in the past, and I'll get to that, we disagree with that as well, those orders at the very least demonstrate that those attorneys have been compensated at different rates based on the Blum factors. And in fact, this Court in Camacho v. Bridgeport Financial had found that to apply a uniform rate across attorneys with differing, with the Blum factors, there's a range of them, without an explanation to be an error and request that court go back and conduct an analysis again. And further, it just simply can't be the Court's experience that is true or accurate as to how attorneys should be compensated. In fact, two cases that were cited to the Court, the Palm Wonderful case and the other one being the Utilities Reform Network case, both demonstrated, again, regardless of whether there are comparable cases in relation to complexity, demonstrate that attorneys are typically paid a range of rates based on the Blum factors. And there's nothing in the, there's no evidence to suggest in this case that it should be anything other than that. In this case, there were four attorneys who worked on the plaintiff's case. There was myself at the time, I was a 10-year attorney, with most of my experience, indeed all of it, being in the consumer advocacy area. There was another attorney with a similar experience to mine, slightly greater than mine, who also, his entire career has been in the consumer advocacy arena, who I consulted with. There was a 25-year attorney who took over the matter while both I and the other attorney were out of the office for a limited amount of time. And there was also an excellent second-year associate who helped me prepare for trial. And each of these attorneys were deemed to have been, to have the equivalent skill, reputation and experience as a fifth-year associate working on the defendant's case. What is my standard review on this particular issue? I think this is a de novo standard here, because I think the Court has improperly, they've applied. Well, isn't it generally the idea that with attorney's fees, the District Court has a discretionary decision to make as to the amount of attorney's fees and as to the hours which the attorney's fees can be apportioned for? That is correct, that is generally. And isn't this then, Justice, District Court's judge's best estimate of the amount that should be paid to each attorney and the amount of hours that should be paid? Your Honor, I would respectfully disagree. I believe this is a legal matter that requires de novo review, because I believe the Court has improperly applied the Blum standard. Well, isn't the Blum, but just a minute, isn't the Blum standard, and I just read it here, to inform and assist the Court in the exercise of discretion, the burden is on the fee applicant to produce satisfactory evidence, in addition to its own affidavit, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. That's the standard, isn't it? That's correct. And in this case, was there anything more than one affidavit? Yes, yes, there were. What was it? There were also the cases cited. There were other complex cases, right? Correct. But as to whether there was any other evidence other than one affidavit and fees awarded in complex cases, that's the best that District Court had, isn't it? Your Honor, there was also a declaration of Alexandria. There was a range of evidence submitted. There were the affidavit from the Plaintiff's Counsel, which included orders with their awarded fees. In other cases, there were two cases cited in the Central District, the Palm Wonderful case, as well as the Utilities Reform Network, as well as an affidavit of Attorney Alex Trueblood, which the Court excluded based on. But all of those pertain to sort of unsubstantiated but complex cases. And this is certainly not a complex case. That's not true. The Trueblood declaration, and this is something that the Court missed in its order, and we briefed, and certainly in the motion of reconsideration, I believe, was apparent in the original joint fee statement. In paragraph 6 of the declaration, Alex Trueblood states that he's handled hundreds of single plaintiff FCRA and FDCPA cases. So that is, while he does list a series of class cases also as his experience, as do we, that is part of his affidavit. But there was no, he didn't correspondingly say what his fee rate was, or other people's fee rate was in those cases. No, he declared that he felt the fees were reasonable. And let me come back to another case. This one, of course, that we submitted, which was Moore v. Bank of America, which is not a class case. It is an individual FCRA case with a TILA claim. And I believe it also had, it may have had a UCL claim, but it may have been a CLRA claim. It slips my mind at the moment. It had an injunctive component, which certainly had broader range in the relief that was eventually afforded in that case. But it was not a class case. So in that case, we were in the Southern District of California. Our rates were approved at a rate that was similar to the rates we requested here. And indeed, they were eventually approved on appeal by the Ninth Circuit as well in that case. But with regard to the issue of complexity, we also feel that it's error that the court reduced the rate for complexity, in addition to reducing ours work for complexity. And this is something that shows up in the Camacho and the Van Skuyck cases. Well, isn't it true on that particular issue that the ultimate decision was between something which counsel had generally thought was appropriate, I guess, but awarded more than what one may say one argued about, but didn't go as far as they would? In fact, went line by line on an assessment of what the hours and what ought to have been billed, and therefore, again, on an abuse of discretion basis, how does the circuit court, unless it wants to get in the business of determining fees on every case, suggest that's an abuse? Well, we believe you're correct that the reduction of the hours themselves is an abuse of discretion standard. But I believe the reduction of the hourly rate, however, based on complexity is, again, of the NOVA review, or perhaps the court, a clear error review if it relates the facts of the case, determining if they're more complex or less complex, the perception of that. The issue is, specifically in relation to the rate, is whether or not it was proper to reduce the rate based on complexity as well as reduce the hours, and does that constitute impermissible double counting, such as what was noted in the Moreno v. City of Sacramento case. These two aspects of the Lodestar analysis, they have to be analyzed separately, and they both have their requisite standards that go along with them. Mr. Clifford, do you want to save any time for? Yes, I will save the remaining 45 seconds for rebuttal. Okay. Mr. Clifford. Good morning, Your Honor. Jan Chilton for defendant and appellee. This is a case which I think illustrates one of the dangers of Lodestar attorney fee awards. They encourage plaintiffs in cases where they have a fair chance of success on appeal to run up fees, because every hour worked is an hour that gets paid, and it not only therefore compensates the plaintiff for unnecessary work, but also operates as a settlement lever to force the defendant to settle for an amount that otherwise would not be justified in the case. I think this is what the district court saw when it looked at this case. It said so at page 5 of the excerpts of record, I think. And that's why it ruled as it did. It took a look at the various factors. It was clearly conscious of this Court's decisions on attorney fee cases and carefully went through them to reach what it thought was a reasonable fee for a case that did not involve anything of complexity. Indeed, it didn't involve any of the issues for which Congress enacted the Fair Credit Reporting Act, because from the very outset, even before the case was filed, the defendant offered to remove the credit line that had caused the problem. So from the beginning, we were talking here about damages. And it was only a question of damages, essentially. And that does not require the sort of effort that went into this case, an effort that is illustrated in the excerpts of record in an 18-page complaint, what is one credit line in an FCR, in a Fair Credit Reporting Act case. And also illustrated at page 334 of the excerpts, in a time entry that the Court reduced from 6.8 hours claimed to 4 hours for reviewing requests for admission. 200 requests for admission in this case. I've never, frankly, dealt with a class action where we had 200 requests for admission. But it illustrates, I believe, what happened here, which was plaintiffs got a case where they felt relatively certain they were going to recover, and they just went at it as if it were a class action. That's what the trial court, district court saw. That's what it went to correct. And it did so according to the standards this Court has allowed. It has to do with the non-taxable costs. The Court held that it lacked discretion to award out-of-pocket costs. Do you – I think based on our case law, that is an incorrect statement of the law. Well, what it thought was – And that would be – legal error would be an abuse of discretion. Legal error is an abuse of discretion, Your Honor, of course. What it saw, and you can see that at pages 8 and 9 of the excerpts, was only – it was only cited cases from this Court on employment discrimination cases. And it felt that the SCRA statute prescribed a different standard as to non-taxable costs. But – That is, that those statutes involved costs rather than – involved full costs rather than costs. Yes. I think. It's – it's – So there's a difference between a statute which says you can recover full costs – Oh, yes. And a statute which says that you can recover costs. Yes, you're absolutely right, Your Honor. And this one says costs. 1920 says costs, Bill, costs. Right. So there's a difference. That's correct, Your Honor. 1920 addresses costs, not full costs. A statute that references costs references 1920. Well, that's not exactly, I guess, the question I had. Oh. If I understand it, we do have a line of cases which are interpreting other statutes and that allow the kind of non-taxable costs that are sought in this case. Yes, and – And the statutory text in those cases is different. Correct, Your Honor. So the question is, is it different enough so that the district court did not commit error in deciding that, for example, under 20th century, costs doesn't mean the same thing as full costs. When you use the word costs, does it – I mean, does the statute exclude non-taxable costs? I mean, that's – by its very language, is that what we're saying? I believe the statutory difference is there for a purpose and that it does indicate the kind of distinction that the district court saw there. If you disagree, obviously, you know. Well, I'm just looking for the basis upon which you support what the district court did. Well, it is the difference in the statutory language, clearly. I mean, it couldn't be anything else. Well, he was interpreting Section 1920. The district court was. Yes. Yes, in part, yes. And also the FCRA. And what you're suggesting is that our cases which have interpreted 1920 not to exclude costs like which are the costs here, travel, courier, copying costs, things like that. We have a lot of cases that say 1920 doesn't necessarily eliminate allocating those costs by the district court in other circumstances. Right. Under other statutes that allow for the award not just of mere costs. I believe that's the distinction here. You not only look at 1920, but the statute under which the award is made. In other words, the FCRA in this case as opposed to 1988 or 2000E3, I got that one right, which were involved in the two cases that you were just mentioning. As to ‑‑ I wanted to address just very briefly, first of all, we, of course, agree with Your Honors that the standard of review here is abuse of discretion across the entire range of the case, with possible exception of the question we were just discussing. And in particular, the overall amount of fees is subject to that. It's rather deferential standard of review because the trial court, district court, has the feel of the case, can see much better than this court what it involved. You're looking at a stack of paper that's only, say, only four inches high. This judge lived with this case for a good many years and knew what was involved in it and made a conscious decision to award the fees he thought were reasonable under the circumstances. The second thing I wanted to address was the complexity issue and how that relates to this case in hours and in rate. In hours, the judge took into account the fact that it was, as I said, a relatively simple case involving a claim for damages only. And he determined, I think quite correctly, that the amount of legal effort that went to recovering that amount of damages was excessive. And he didn't do it just on a general basis of saying, you know, too much effort in general, I'm going to knock them 30% off the top. He went hour by hour very carefully through granting some of our objections to some of the categories of hours and denying others. He looked at every one in a manner that was far more thorough than, I think, we want to require district court judges to act. It was certainly commendable effort, and it took a lot of effort. As to the rate, the judge did not discount the rate for complexity or lack of it. Rather, he said, as in the Tomovich case, this isn't similar work that you're quoting me from the class action cases, the complex cases that require particular skill. Justice and appeal is not the same as, you know, collection action. And he did not raise the bar. Mr. Shelby, your time has expired, so if you could just wrap it up. Thank you very much, Your Honor. Mr. Marshall. I'd like to address briefly the issue of the defense are fond of talking about plaintiffs' attorneys running up the fees in this case. I think that was addressed in the Moreno case, where the plaintiff's attorney, as a contingency attorney, is not likely to run up the fees because it's not guaranteed that we're going to get paid. That seems to be the assumption that the defense counsel runs under. We have other work, and we apportion our work accordingly as to what we think needs to get done on the cases to win the case, not as to what case we think we could push hours into to get paid on. You know, in Moreno, in fact, the court specifically acknowledged that concept by saying that concept as well as saying there should be some deference given to the plaintiff's attorney's judgment for had there been more of a slack or perhaps they wouldn't have won. And in this instance, we have a case where there was, for damages, there was an offer of $2,500 in early mediation, and eventually we obtained $20,000 for our client plus fees, so had we not pursued the case as vigorously as we had, we likely would not have obtained the same results. Thank you, Mr. Marshall. Thank you, Mr. Chilton. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Smith N. R.